UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ANGELA BRYANT, | : | Case No. 3:18-cv-353 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

## I. Introduction

Plaintiff Angela Bryant brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income. She applied for benefits on May 13, 2013, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The Appeals Council denied Plaintiff's request for review, and she filed a previous action in United States District Court for the Southern District of Ohio. The Court vacated the Commissioner's decision and remanded the case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. *See Bryant v. Berryhill*, 3:15-cv-354, 2017 WL 713564 (S.D. Ohio Feb. 22, 2017) (D.J. Rice). Upon remand, ALJ

Kenyon held a hearing and then issued a decision finding that Plaintiff was not under a disability within the meaning of the Social Security Act and was, therefore, not eligible for Supplemental Security Income.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record (Doc. #7).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Kenyon's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since January 5, 1984. She was twenty-nine years old when she applied for benefits and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). She has a limited education. *See id.* § 416.964(b)(3).

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #6, *PageID* #s 338-54); Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #11); and Plaintiff's Reply (Doc. #12). Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III. Standard of Review

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v.*

*City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence

3

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since May 13, 2013.

Step 2: She has the severe impairments of degenerative disc disease of the lumbar spine; borderline intellectual functioning, and an opioid abuse disorder.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following limitations: (1) sitting for no more than 4 hours per day, and for no more than 2 hours at a time; (2) standing for no more than 3 hours per day, and for no more than 1 hour at a time; (3) walking for no more than 1 hour per day and for no more than 30 minutes at a time; (4) frequent use of the upper extremities for reaching, pushing, and

4

> pulling; (5) frequent use of the lower extremities for foot controls; (6) occasional crouching, crawling, kneeling, and stooping; (7) frequent balancing and climbing of ramps and stairs; (8) no climbing of ladders, ropes, or scaffolds; (9) no work around hazards such as unprotected heights or dangerous machinery; (10) no concentrated exposure to temperature extremes or vibrations; (11) limited to performing unskilled, simple, repetitive tasks; (12) occasional contact with coworkers, supervisors, and the public; (13) no fast-paced production work or jobs which involve strict production quotas; and (14) limited to performing jobs which involve very little, if any, change in the job duties from one day to the next."

Step 4: She is unable to perform any of her past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 338-54). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 353.

## V. Discussion

Plaintiff contends that the ALJ erred by relying on the evaluating consultant's opinion and by rejecting her treating physician's opinion.

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

5

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

Before addressing the ALJ's evaluation of the medical opinions, a quick review of the physicians' opinions is helpful. Phillip Swedberg, M.D., evaluated Plaintiff in December 2017. (Doc. #6, *PageID* #s 742-56). He noted that Plaintiff had a steady gait without the use of ambulatory aids. She was comfortable in the sitting or supine positions. She could bend forward at the waist, stand on either leg, and squat without difficulty. According to Dr. Swedberg, "her neuromuscular examination was entirely normal." *Id.* at 756. He concluded that Plaintiff "appears capable of performing a

6

moderate to marked amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects." *Id*.

Dr. Swedberg also completed a "medical source statement of ability to do work-related activities." *Id.* at 747-52. He opined that Plaintiff could lift eleven to twenty pounds continuously and carry up to ten pounds continuously. She could sit for two hours at a time for a total of four hours during an eight-hour workday; stand for one hour at a time for a total of three hours; and walk for thirty minutes at a time for a total of one hour. She does not need a cane to ambulate. She could frequently reach overhead, push/pull, and operate foot controls with her right foot. Plaintiff could occasionally climb ladders or scaffolds, stoop, kneel, crouch, and crawl. She could frequently balance and climb stairs and ramps. She cannot tolerate exposure to unprotected heights, extreme cold, or vibrations. She could occasionally tolerate extreme heat, humidity, and wetness. She could frequently tolerate exposure to dust, odors, fumes, and pulmonary irritants, moving mechanical parts, and operating a motor vehicle. She could tolerate moderate (office) noise.

Plaintiff's treating physicians, Scott D. Shaw, M.D., and Martin Schear, M.D.,[1] completed a medical assessment in June 2014. *Id.* at 329-33. Dr. Shaw opined that Plaintiff could lift and/or carry up to ten pounds occasionally and five pounds frequently. He noted that an x-ray and MRI revealed degenerative disc disease and facet arthroplasty.

---

[1] The Commissioner notes that this was a joint opinion signed by both physicians (or signed by one and stamped by the other). The ALJ referred to it as only Dr. Shaw's opinion and, for consistency, the Commissioner did as well. Plaintiff referred to as Dr. Shaw/Schear's opinion. The Court will refer to the joint opinion as Dr. Shaw's opinion.

7

Further, physical therapy was ineffective in the past. He opined that Plaintiff could stand and walk for fifteen minutes at a time for a total of two hours and could sit for thirty minutes at a time for a total of two hours. She can never climb, balance, stoop, crouch, kneel, or crawl. She would experience increased pain with pushing, pulling, or reaching. Plaintiff would have increased back pain if exposed to vibrations and moving machinery. She would experience increased asthma symptoms with exposure to chemicals, dust, fumes, and humidity. Dr. Shaw concluded that Plaintiff does not have the residual functional ability to perform sedentary work on a sustained basis.

The ALJ assigned "great weight" to the opinion of examining physician, Phillip Swedberg, M.D. *Id.* at 347. He explained: Dr. Swedberg examined and tested Plaintiff; examined the 2014 MRI; and "based his opinions upon this objective evidence and his expertise." *Id.* The ALJ adopted his opinion that Plaintiff was capable of a reduced range of light work despite the ALJ's finding—in his previous decision—that she could only perform sedentary work. *Id.* at 68. Indeed, the ALJ noted that he largely adopted all of Dr. Swedberg's opined restrictions—but retained some restrictions recommended by the previous examining physician, Dr. Magnusen.

In comparison, the ALJ found that the opinions of Plaintiff's treating physician, Scott Shaw, M.D., could not be given controlling weight and instead assigned them "little weight." *Id.* at 349. He gave a few reasons. First, the ALJ recognized that Dr. Shaw had a longitudinal relationship with Plaintiff—treating her in their office since 2011. However, the ALJ then gave several reasons for discounting his opinion. The ALJ took issue with Dr. Shaw's opinion because, when asked what medical findings support his

8

assessment, he responded (in part) "physical therapy ineffective in past." According to the ALJ, this means that his limitations are "based entirely upon [Plaintiff's] subjective reports to her physicians." *Id.* (citations omitted). But this is puzzling. Dr. Shaw first circled "yes" when asked "Are lifting/carrying affected by the impairment(s)?" *Id.* at 329 (capitalization omitted). When asked what medical findings support his assessment, Dr. Shaw noted that an x-ray and MRI showed degenerative disc disease and facet arthropathy. He then noted that physical therapy was ineffective. In other words, Dr. Shaw clearly indicated that his opinion was not based solely on subjective statements; he based it on objective evidence: an x-ray and MRI. In addition, there is no logical connection between Dr. Shaw's statement that physical therapy was ineffective and the ALJ's conclusion that he based his opinion on Plaintiff's subjective reports.

The ALJ discounted Dr. Shaw's opinion because he found that Dr. Shaw's postural limitations conflict with Plaintiff's own reports. Specifically, Plaintiff testified that she sits six to seven hours a day, but Dr. Shaw opined Plaintiff could only sit for two hours in an eight-hour workday. The ALJ over simplified Plaintiff's testimony. Plaintiff testified that she lays on a heating pad and also uses a heating pad when she is sitting. She uses a heating pad usually between six and seven hours per day. *Id.* at 372. But if the ALJ is correct and Plaintiff sits for six to seven hours, she testified that when she sits, she has to keep her legs propped up all day to ease her back pain and to reduce swelling in her feet. *Id.* at 372, 378. For instance, if she is in a recliner, she puts a pillow underneath her legs. *Id.* at 373. The ALJ does not account for her leg elevation. Additionally, Plaintiff testified that she can only sit for short periods of time and then she

9

has to get up and walk around. *Id.* at 375. She also explained that she sometimes alternates between lying down, sitting, and walking. *Id.* at 379. Thus, substantial evidence does not support the ALJ's finding that Dr. Shaw's opinion conflicts with Plaintiff's testimony.

Notably, the ALJ was significantly more critical of Dr. Shaw's opinion than he was of Dr. Swedberg's opinion. This constitutes error: "[T]he regulations do not allow the application of greater scrutiny to a treating-source opinion as a means to justify giving such an opinion little weight. Indeed, they call for just the opposite." *Gayheart*, 710 F.3d at 374. For instance, the ALJ did not point out inconsistencies between Dr. Swedberg's summary of Plaintiff's abilities/limitations and his responses on the medical source statement. In his summary Dr. Swedberg indicates that Plaintiff has no difficulty reaching. But, he later checks the box indicating Plaintiff can only frequently reach overhead. Further, Dr. Swedberg opined that she has no environmental limitations. But, then he indicates Plaintiff can never tolerate exposure to unprotected heights, extreme cold, and vibrations. She can only occasionally tolerate exposure to extreme heat, humidity, and wetness. She can only frequently be exposed to dust, odors, fumes, and pulmonary irritants. He does not mention any restrictions on Plaintiff's ability to use her right foot for operation of foot controls but later indicates she can only do so frequently. Likewise, he does not indicate she has limitations regarding her ability to climb ladders/scaffolds, stoop, crouch, or crawl but then opines she can only do so occasionally.

Furthermore, the ALJ does not acknowledge that Dr. Swedberg did not identify what medical or clinical findings support his assessment in any of his responses on the

medical source statement. Instead, the ALJ read his evaluation and his medical source statement and relied on the evaluation to explain the medical source statement responses.

Additionally, the ALJ failed to point out that Dr. Swedberg's opinion is not consistent with significant medical evidence in the record. For example, David K. Magnusen, M.D., who examined Plaintiff in 2013, noted that her cervical paraspinal muscles were tender to palpation. (Doc. #6, *PageID* #291). Additionally, she had significant tenderness over the lumbosacral paraspinals and sacroiliac area. Sacroiliac provocative maneuvers on her left were markedly positive—including Faber and Gaenslen tests. She had decreased range of motion in her cervical and dorsolumbar spine. *Id.* at 293-94. She had some restriction with range of motion of her left hip. Although she was able to stand from a sitting position without assistance, she appeared a bit uncomfortable and was slow as she transitioned. Her cadence was a bit slow but her stride length was equal. She appeared uncomfortable with attempting to squat and kneel.

Similarly, Plaintiff's treating physician regularly documented decreased range of motion, tenderness, and spasms in Plaintiff's back. *Id.* at 601-47. And, in May 2018, Plaintiff presented to the emergency department at Miami Valley Hospital reporting of leg, hip, and back pain. They noted she had palpable lower lumbar back tenderness. *Id.* at 862. Additionally, she had palpable tenderness throughout her lower extremities with mild swelling. They diagnosed dependent edema and degenerative lumbar disc disease and provided her with a cane to use. *Id.* at 863-64

Turning back to Dr. Shaw's opinion, the ALJ also discounted it because he relied "almost entirely" on the 2014 MRI. The ALJ noted that Dr. Shaw limited Plaintiff from

11

climbing, crouching, balancing, kneeling, stooping, or crawling based on the MRI. The ALJ pointed out that Dr. Swedberg relied on the 2014 MRI as well as testing Plaintiff's strengths and abilities. For instance, Dr. Swedberg had Plaintiff bend and squat and noted that she did so without difficulty or signs of discomfort. The ALJ's finding is misleading. When asked "what medical findings support this assessment," Dr. Shaw noted, "MRI of lumbar spine." *Id.* at 331. It is unreasonable to assume that his responses do not reflect his three years of examining Plaintiff in addition to the MRI. For example, treatment records from his office show that Plaintiff consistently reported back pain and physical examinations revealed decreased range of motion, tenderness, and spasms in Plaintiff's back. *Id.* at 283, 285, 317, 319, 321, 323, 601-47.

The ALJ took issue with Dr. Shaw basing his opinion that Plaintiff had environmental limitations on a history of asthma. The ALJ indicated that the record reflects a historical diagnosis of asthma and Plaintiff stated in 2015 that she had no problems in the past two to three years. In other words, the ALJ recognized that Dr. Shaw was correct—Plaintiff has a *history* of asthma. And although the ALJ is correct that Plaintiff has not had problems in the past couple years, asthma cannot be cured. *Asthma*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/asthma/symptoms-causes/syc-20369653 (last visited March 20, 2020). Thus, substantial evidence does not support the ALJ's reason for rejecting Dr. Shaw's reasonable environmental restriction.

The ALJ specifically assigned "no weight whatsoever" to Dr. Shaw's opinion that Plaintiff is not capable of performing sedentary or light work because "the ultimate

12

conclusion as to whether an individual satisfies the statutory definition of 'disability' is an issue that is reserved to the Commissioner …." (Doc. #6, *PageID* #349). The fact that Dr. Shaw expressed an opinion on the ultimate issue of Plaintiff's disability status is not a valid reason to discount or ignore it. "The pertinent regulation says that 'a statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.' That's not the same thing as saying that such a statement is improper and therefore to be ignored...." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (internal citation omitted); *see Kalmbach v. Comm'r of Soc. Sec.*, No. 09-2076, 409 F. App'x 852, 861 (6th Cir. 2011) ("the fact that the ultimate determination of disability, *per se,* is reserved to the Commissioner, 20 C.F.R. § 404.1527(e) [§ 416.927(d)(1)], did not supply the ALJ with a legitimate basis to disregard the physicians' [opinions].").

In sum, the ALJ inadequately addressed Dr. Swedberg's opinion and failed to provide good reasons, supported by substantial evidence, for rejecting Plaintiff's treating physician's opinion. Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[2]

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to

---

[2] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

13

provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to

determine anew whether Plaintiff was under a disability and whether her application for Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability finding is vacated;

2. No finding is made as to whether Plaintiff Angela Bryant was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case is terminated on the Court's docket.

Date: March 23, 2020                *s/Sharon L. Ovington*
                                    Sharon L. Ovington
                                    United States Magistrate Judge